# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2722 | **DATE** | 11/25/02 |
| **CASE TITLE** | | Deloughery vs. City of Chicago | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set forth on the attached order, the Court denies the motion to dismiss. Defendants are required to answer within ten days all claims that they have not yet answered.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | 30 |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| OR | courtroom deputy's initials | | | |

DEC 03 2002

CLERK U.S. DISTRICT COURT

02 DEC -2 PM 5:21

FILED 10
date/time received in central Clerk's Office

mailing deputy initials

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|                                                                                      |     |                    |
| ------------------------------------------------------------------------------------ | --- | ------------------ |
| DOLORES DELOUGHERY and<br>MARIE JOHNSTON,                                             | )   |                    |
|                                                                                      | )   |                    |
|     Plaintiffs,                                                   | )   |                    |
|                                                                                      | )   |                    |
|     vs.                                                           | )   | Case No. 02 C 2722 |
|                                                                                      | )   |                    |
| CITY OF CHICAGO and TERRY HILLARD,<br>Superintendent of the Chicago Police Department,| )   |                    |
|                                                                                      | )   |                    |
|     Defendants.                                                   | )   |                    |



### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendants City of Chicago and Terrence Hillard[1] have moved to dismiss the claims

of plaintiffs Dolores DeLoughery and Marie Johnston pursuant to Fed. R. Civ. P. 12(b)(6).

For the reasons stated below, the Court denies defendants' motion.

### Background

Both plaintiffs are women who are employed as Lieutenants with the Chicago Police

Department. DeLoughery, who is of Hispanic national origin, is assigned as a Commanding

Officer in the Youth Division. Johnston is assigned as a field lieutenant in the Third District

of the Patrol Division. Though the amended complaint is somewhat less than a model of

clarity, it appears that they are making claims under Title VII of the Civil Rights Act of 1964,

42 U.S.C. §2000e-5 (Count 1), and under 42 U.S.C. §1983 (Count 2). Defendants have

---

[1] Though Hillard is not identified as a defendant in the amended complaint's caption,
the body of the complaint clearly indicates that plaintiffs intended to name him.

moved to dismiss Count 2.

In July 2000, the City announced a promotional process for persons seeking promotion to the position of Captain in the Police Department. Both plaintiffs applied for the position. According to the amended complaint, Chicago Police Superintendent Hillard had the authority to select candidates to be promoted. In December 2000, January 2001 and January 2002, various candidates were promoted, but both plaintiffs were passed over. In Count 2, they allege that they were denied the promotion based on their gender in violation of the Equal Protection Clause and in retaliation for their exercise of their free speech rights under the First Amendment. In the motion to dismiss, the City argues that plaintiffs have failed to allege a proper basis for imposition of municipal liability under §1983; both defendants argue that plaintiffs have failed to allege that their speech involved matters protected by the First Amendment; and Hillard argues that he is entitled to qualified immunity with respect to the free speech claim. Neither defendant attacks the equal protection claim on its merits or based on qualified immunity.

According to the amended complaint, in May 1998, Johnson filed a gender discrimination charge with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission arising from her non-promotion to watch commander in 1998. In August 2000, DeLoughery filed with the same agencies a charge claiming she was denied promotion and transferred from the position of "commanding officer" to lieutenant in March 2000 due to her gender and national origin, and that she had been denied unspecified promotions in retaliation for complaining about discrimination. Both plaintiffs filed similar charges with the Department of Justice, Office of Civil Rights in 2000 (DeLoughery) and 2001 (Johnston).

2

Plaintiffs also allege in the amended complaint that before and after the filing of these charges, they had written and spoken to Hillard to express their concern about the Police Department's alleged failure to promote women, the need to develop child care facilities for police officers due to the nature of their duties and "the positive impact of child care facilities upon job performance and satisfaction for employees, particularly women," and the need to assign more women in specialized and prestigious units of the Department such as the Detective Division. DeLoughery also alleges that she expressed to Hillard her concern that Hispanic women were underrepresented in the Department as a whole and in particular in higher ranks and specialized units. Both plaintiffs allege that they developed and participated in discussions among Police Department employees concerning bias in promotions, and that Hillard was aware of this.

Count 2 does not squarely allege that plaintiffs were denied promotion to captain based on their exercise of First Amendment rights. Both sides, however, construe the amended complaint as alleging exactly that.

### Discussion

A motion to dismiss tests the sufficiency of the complaint without deciding its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court must construe all allegations in plaintiffs' complaint in the light most favorable to plaintiffs, taking the complaint's allegations as true. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). We may dismiss the complaint only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998).

The City argues that it cannot be held liable under §1983 for Hillard's alleged

3

conduct, because Hillard is not a final policymaker for the City. Both the City and Hillard argue that plaintiffs' alleged speech does not involve a matter of public concern protected by the First Amendment. Finally, Hillard argues that he is entitled to qualified immunity with respect to the First Amendment claim. We address these arguments in turn.

### 1.    Superintendent Hillard as a final policymaker

A municipality may not be held vicariously liable under § 1983 for its agents' constitutional torts. *Monell v. New York Department of Social Services,* 436 U.S. 658, 694 (1978). Rather, a municipality is only if the constitutional deprivation is caused by a municipal policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* In this case, plaintiffs argue that their unconstitutional dismissal was caused by Hillard, who they say has final policymaking authority for the City in such matters. Am. Cplt. ¶8. If so, they can maintain a claim against the City. *See, e.g., McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995).

In *Auriemma v. Rice,* 957 F.2d 397 (7th Cir. 1992), the Seventh Circuit addressed whether Chicago's Superintendent of Police is a policymaker for purposes of *Monell.* Fred Rice, who was Superintendent at the time, reshuffled the senior ranks of the Police Department, promoting thirteen African-Americans, nine whites, and three Hispanics, while demoting twenty-five whites, one Hispanic, and no African-Americans. *Id.* at 398. Some of the demoted officers filed suit against Rice and the City under 42 U.S.C. § 1983, contending that Rice had impermissibly based his decisions on race and political affiliation. The court conceded that Rice had final authority to make personnel decisions but said that this did not make him a policymaker: "[a]uthority to make a final decision need not imply authority to establish rules. In Chicago it does not." *Id.* at 401. Rather, the court said, policy was set by

the City's legislative body in passing the rules that governed the Superintendent's conduct, rules which Rice was claimed to have violated. *Id.* Though the court noted that such violations, if "'systemic in nature[,]' can amount to local policy," it held that plaintiffs effectively had conceded that such was not the case by alleging that Rice had departed from ordinary practice. *Id.* (quoting *Sims v. Mulcahy*, 902 F.2d 524, 543 (7th Cir. 1990)). Judge Ripple emphasized this point in his concurring opinion: "Under the facts of this case, Rice can claim no ... source of authority [other than state law and municipal ordinances] and we need not speculate whether, on other facts, a custom or usage *having the force of law* might make him ... a policymaker." *Id.* (Ripple, J., concurring) (emphasis added).

In *Kujawski v. Board of Commissioners*, 183 F.3d 734 (7th Cir. 1999), Judge Ripple, writing for the court, developed this same theme. As in *Auriemma*, the plaintiff in *Kujawski* contended that the chief of an administrative department – a county probation office – had fired him in violation of the First Amendment, and he sued the county under 42 U.S.C. §1983. The trial court dismissed the plaintiff's claim, holding that under state law, the county board had final policymaking authority over the department. Consistent with *Auriemma*, the trial ruled that the fact that the chief probation officer had final authority to make personnel decisions did not make him a policymaker for purposes of municipal liability under §1983. The Seventh Circuit agreed that "the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority. There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire." *Id.* at 739. But it held that there was a genuine factual issue regarding "whether the [County] Board had, as a matter of custom, delegated final policymaking authority" to the chief probation officer who had fired the plaintiff. *Id.* It construed the evidence as suggesting

5

that the Board "as a matter of policy, ... did not intervene in employment decisions" of the department in question. *Id.* This, along with other evidence, was sufficient to allow a fact finder to determine that the Board had delegated the authority to make employment policy decisions, not simply the authority to hire and fire. *Id.*

In this case, plaintiffs have sufficiently alleged what the plaintiff in *Auriemma* did not: that via custom and practice, the City had delegated to Hillard final authority to make policy regarding personnel matters, and not just authority to hire and fire. The City reads paragraph 9 of the Amended Complaint as saying only the latter, but it is susceptible of the broader reading ascribed to it by plaintiffs in their response to the motion to dismiss in an effort to distinguish their case from *Auriemma*. Because we are dealing with a motion to dismiss, we must construe plaintiffs' allegations liberally. Though we are skeptical regarding plaintiffs' ability to prove the delegation they claim, the amended complaint entitles them to an opportunity to try. The City's motion to dismiss on this basis is therefore denied.

### 2. Protected speech

A public employee's speech is protected by the First Amendment if it addresses a matter of public concern, and the employee's interest in expression outweighs the state's interest as an employer in promoting the efficiency of the public services it performs through its employees. *Connick v. Myers,* 461 U.S. 138 (1983); *Pickering v. Board of Education of Township High School District 205,* 391 U.S. 563 (1968). The issue of discrimination in public employment is unquestionably a matter of considerable public importance, *see, e.g., Kokkinis v. Ivkovich,* 185 F.2d 840, 844 (7th Cir. 1999); defendants do not argue otherwise. But as the Seventh Circuit stated in *Kokkinis,* "speaking up on a topic that may be deemed one of public importance does not automatically mean the employee's statements address a

6

matter of public concern as that term is employed in *Connick*." *Id.* Rather, one must "'delve deeper into the precise content, form, and context of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?'" *Id.* (quoting *Callaway v. Hafeman*, 832 F.2d 414, 417 (7th Cir. 1987)). Defendants focus their attention on the circumstances surrounding plaintiffs' alleged speech, arguing that it is clear from the context that they were addressing only their own interests, not matters of public concern. But at least some of what plaintiffs allege in their complaint is suggestive of a broader goal, specifically plaintiffs' claimed development and participation in discussion groups concerning these issues, and their claimed advocacy of promotions for women and Hispanics generally, not just for themselves. *See* Am. Cplt. ¶¶ 13, 14. And perhaps more importantly for present purposes, the inquiry requires an examination into the factual circumstances of the alleged speech – including the plaintiffs' motivation[2] – that cannot properly be undertaken in the context of a motion under Rule 12(b)(6). For now it suffices that plaintiffs have alleged, with detail not required by the Rules of Civil Procedure, enough to defeat any contention that "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### 3. Qualified immunity

Hillard argues that he is entitled to qualified immunity from liability on plaintiffs'

---

[2] However, "[a] personal aspect contained within the motive of the speaker does not necessarily remove the speech from the scope of public concern." *Gustafson v. Jones*, 290 F.3d 895, 908 (7th Cir. 2002).

First Amendment claims. He argues that he had discretion to choose for promotion whomever he wanted among those who were qualified. Though that is no doubt true as a matter of municipal or state law, it is well established that the prohibition on retaliating against public employees for exercising their First Amendment rights extends to a failure to give a promotion. *See Rutan v. Republication Party of Illinois*, 497 U.S. 62, 72 (1990).

Hillard also argues that it was not clearly established at the time of the promotion denials that failure to promote employees in the circumstances of this case violated those employees' constitutional rights. Though it is conceivable that Hillard may be able to demonstrate an entitlement to qualified immunity at the summary judgment stage, his argument fails at the current juncture. As the Seventh Circuit has recently counseled, qualified immunity is "almost always a bad ground for dismissal" under Rule 12(b)(6). *See Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000); *id.* at 775 (Easterbrook, J., concurring). Under the Federal Rules' notice-pleading regime, a plaintiff is not required to plead around an anticipated qualified immunity defense, *see Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980), and thus the facts and circumstances bearing on the assertion of qualified immunity are at this point unknown to the Court. At this stage we must ask whether, taking the complaint's allegations in the light most favorable to the plaintiffs, it is beyond doubt that plaintiffs could prove no set of facts under which a claim of immunity would be denied. The answer to that question is no. If, for example, DeLoughery made repeated comments of which Hillard was aware to the effect that the Department was doing a poor job of promoting women to significant positions, and Hillard conceded that he based his decision to pass DeLoughery over for promotion on her outspokenness about this issue, he would not be entitled to qualified immunity. Because we are not able to rule out this or similar scenarios at

8

this stage of the case, we cannot dismiss the First Amendment claim against Hillard based on his qualified immunity defense.

## Conclusion

For the reasons stated above, the Court denies the motion to dismiss. Defendants are required to answer within ten days all claims that they have not yet answered.

Date:  November 25, 2002

MATTHEW F. KENNELLY
United States District Judge