Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2722 | **DATE** | 9/22/2003 |
| **CASE TITLE** | Deloughery vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants summary judgment in favor of the City on plaintiffs' § 1983 claim, but denies the City's motion for summary judgment on the Title VII claim and Hillard's motion for summary judgment on the § 1983 claim (51-1, 53-1). The final pretrial order remains due on 10/31/03, and the case remains set for trial on 1/5/04 at 9:45 a.m. The case is set for a status hearing on 9/30/03 at 9:30 a.m. to discuss the possibility of settlement.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

date docketed: SEP 2 3 2003

Document Number: 75

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DELORES DELOUGHERY and )
MARIE JOHNSTON, )
                                                                )
             Plaintiffs, )
                                                                 )
vs. )    Case No. 02 C 2722
                                                             )
CITY OF CHICAGO and TERRY HILLARD, )
                                                             )
             Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      Delores Deloughery and Marie Johnston, both Lieutenants in the Chicago Police Department, have sued the City of Chicago and Police Superintendent Terence Hillard, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and 42 U.S.C. § 1983. They allege that defendants violated their civil and constitutional rights when they were passed over for a promotion to the rank of Captain; specifically they contend that promotion was denied because they had made claims of discrimination and had spoken out regarding the perceived need for more women in positions of authority in the CPD.

      Defendants have moved for summary judgment. They argue that plaintiffs have failed to produce evidence that would support a prima facie case of retaliatory discrimination under either Title VII or § 1983. Alternatively, they argue that plaintiffs have failed to rebut Hillard's stated, non-discriminatory reasons for denying them promotions. Hillard argues that he cannot be held individually liable under Title VII in any event, and the City disclaims vicarious liability under §

75

1983 for Hillard's personnel decisions. For the reasons outlined below, the Court grants defendants' motions in part and denies them in part.

First, the Court agrees that Hillard cannot be sued under Title VII in his individual capacity. As he correctly states, a supervisor in his individual capacity is not an "employer" as defined by Title VII, *see Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998), and plaintiffs appear to concede the point. We therefore address the Title VII claims only insofar as they are directed against the City.

To avoid summary judgment on their Title VII retaliation claims, plaintiffs must make out a prima facie case of retaliation within the framework established in *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640 (7th Cir. 2002). *See Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Because they have no direct evidence of retaliation, they must proceed under the indirect method– an "'adaptation of the McDonnell Douglas test to the retaliation context.'" *Id.* at 531 (quoting *Stone*, 281 F.3d at 644). Each plaintiff must show that she (1) engaged in statutorily protected activity; (2) performed her job according to her employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* Because the adverse employment action at issue here is the City's failure to promote plaintiffs, the fourth element requires plaintiffs to identify similarly situated employees who did not file discrimination charges and who did not speak out on women's issues in the CPD, and who were promoted. If the plaintiff establishes these elements, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Once the defendant presents a legitimate, non-invidious

2

reason, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Id.*

Defendants first argue that plaintiffs have failed to make out a prima facie case. They argue primarily that plaintiffs have failed to identify similarly situated police Lieutenants. They also contend that plaintiffs were unqualified for the promotion and therefore did not meet the City's or Hillard's legitimate expectations. As an initial matter, we note that "the prima facie case cannot be used by rote but must be adapted to fit the varying facts of discrimination cases." *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). Because this case involves promotion, not discharge, the most pertinent question on element two of the prima facie case is whether plaintiffs were qualified for the promotion, an issue also raised by defendants' assertion that the plaintiffs were not promoted because they lacked certain qualifications. And this issue dovetails to some extent with the issue of whether plaintiffs have identified similarly situated employees who were promoted. *See e.g., Grayson v. O'Neill*, 308 F.3d 808, 818 (7th Cir. 2002) ("when a plaintiff produces evidence sufficient to raise an inference that the employer applied its legitimate expectations in a disparate manner, the second and fourth prongs of *McDonnell Douglas* merge, allowing the plaintiff to establish a prima facie case by establishing that similarly situated employees were treated more favorably"). The "linchpin" of the prima facie case here is evidence of disparate treatment between plaintiffs and others filing charges of discrimination or speaking out against the Department, and similar Lieutenants who did not engage in that protected activity. *See Flores*, 182 F.3d at 514-15. In order for plaintiffs to demonstrate disparate treatment, they first need to identify candidates who were promoted and who had equal or lesser qualifications, as the City and Hillard has defined them. Defendants

3

argue that plaintiffs have failed to do so. We believe that they have.

Hillard stated that the factors he considered in choosing Lieutenants for promotion included rankings by district commanders. *See* Pls' Ex. 13 (City report to DOJ) at 210. But plaintiffs were both ranked favorably by several district commanders, *see* Pls' Ex. 31, and defendants admit to promoting at least two candidates, Cathy Touhy and Anne Egan, who did not file discrimination charges, and who did not appear on any district commander's list of recommended candidates. Moreover, defendants argue that Johnston was not promoted in part because of certain disciplinary problems she experienced, but Hillard promoted at least one other individual with disciplinary problems (George Cornish) who had neither filed discrimination charges nor spoken out against the department on women's issues. *See* Pls' Ex. 3 (Hillard Dep.) at 33. And plaintiffs point to other circumstantial evidence of disparate treatment. For example, Hillard testified in a deposition in a previous discrimination case, that during the promotions process, he separated the applications of eligible candidates into three piles labeled "highly qualified," "qualified," and "unqualified," and could recall only the names of persons who had filed discrimination charges against the Department as candidates whose applications he placed in the "unqualified" pile. *See* Pls' Ex. 3A (Hillard Dep.) at 15-18. In sum, a reasonable jury could find that plaintiffs have met the elements of a prima facie case of retaliation.[1]

The Court also finds that plaintiffs have come forward with evidence that Hillard's stated reasons for not promoting plaintiffs were pretextual. A plaintiff in a Title VII case can

---

[1] Defendants argue that plaintiffs' retaliation claims fail for the additional reason that too much time passed between their protected activities (speech and filing of discrimination charges) and Hillard's promotion decisions to infer retaliation. But proof of temporal proximity is not required to make out a prima facie case of retaliation. *See Stone*, 281 F.3d at 644. The Seventh Circuit cases the defendants cite involve failed attempts by plaintiffs to establish as part of their prima facie case a direct causal link between their protected activities and the adverse employment actions they suffered–a burden no longer imposed on plaintiffs in retaliation cases. *See id.*

4

demonstrate pretext by showing that an employer's reasons are (1) factually baseless, (2) did not actually motivate defendants, or (3) were insufficient to motivate them. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). Evidence that an employer's proffered nondiscriminatory reasons have changed over time is sufficient to raise a genuine issue of fact on the question of pretext. *Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 677-78 (7th Cir. 2003). Hillard has stated that he did not promote plaintiffs because he did not have confidence in them and they lacked certain leadership qualities. But plaintiffs have produced evidence that casts doubt on the factual basis for Hillard's evaluation of plaintiffs' qualifications, along with evidence that suggests that his stated reasons might be post hoc rationalizations.

For example, when asked to explain why he questioned Deloughery's judgment and leadership skills, Hillard stated that she had improperly assisted her sister–a prospective police officer–during a training exercise by rigging the score on her running test. *See* Pls' Ex. 13 (City report to DOJ) at 209. He later acknowledged, however, that Deloughery was merely present during the training exercise. Pls' Ex. 14 (Defs' Ans. to Interrogs.) at 2. Further, Hillard stated that he questioned Deloughery's leadership skills based on an alleged conversation they had in which, he claimed, Deloughery mentioned a "Top Cop" award she had received but failed to make suggestions for handling an ongoing scandal in the Department. *See id.* When asked to recount that conversation during his deposition, however, Hillard did not mention the Top Cop award, stating only that he and Deloughery had a general conversation about Deloughery's father's retirement from the police force. Pls' Ex. 3 (Hillard Dep.) at 12-15. Further, he indicated that if Deloughery had wanted to make a suggestion about the scandal in the Department, that she should have made it through the chain of command–and not to him directly.

5

*Id.*

When asked to elaborate on why Johnston was unqualified for promotion, Hillard initially stated that she was "very indecisive." Pls' Ex. 3A (Hillard Dep.) at 97. When asked to state an occasion on which she was indecisive, he waffled, stating that she was not so much indecisive, as she was an inadequate mentor. *Id.* Hillard also stated that Johnston stayed inside too much as a watch commander. *See Id.* at 102. He has acknowledged, however, that he has no knowledge of Johnston's performance as a watch commander since 1995. Defs' Resp. to Pls' 56.1(b)(3)(B) Stmt., ¶ 290. Though these inconsistencies do not prove that Hillard's reasons for not promoting Johnston and Deloughery are phony, they raise a genuine issue of material fact on the issue of pretext. For this reason, plaintiffs' Title VII retaliation claims must be allowed to proceed.

To establish their § 1983 claim, which is based on First Amendment retaliation, plaintiffs must show that they engaged in constitutionally protected speech and that defendants retaliated against them based on that speech. A public employee's speech is protected if it addresses a matter of public concern, and the employee's interest in expression outweighs the state's interest in promoting the efficiency of the public services it performs through its employees. *Connick v. Myers*, 461 U.S. 138, 142 (1983). Plaintiffs claim that they were passed over for promotion because of their advocacy for women's issues in the Department. Defendants argue that plaintiffs' speech is not protected because it related only to their personal grievances and private interests. The Court disagrees. The evidence reflects that Deloughery and Johnston (at least through membership in the Chicago Police Women's Association (CPWA)) advocated for female police officers generally. Deloughery spoke directly with Hillard about the need for increasing women in specialized units and higher ranks, *see* Pls' Ex. 7 (Perez Dep.) at 28-29, and

Johnston prepared and compiled CPWA newsletters that were forwarded to Hillard on women's issues including merit promotions and the impact of nepotism. *See* Defs' Resp. to Pls' 56.1(b)(3)(B) Stmt, ¶ 107. Though plaintiffs may have been personally affected by discrimination in the workplace, that does not mean that their speech on these issues fails to qualify for First Amendment protection. There is no question that sex discrimination in public employment is a matter of public concern. *See Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999); *Hartman v. Board of Trustees of Community College District No. 508*, 4 F.3d 465, 472 n.5 (7th Cir. 1993); *Marshall v. Allen*, 984 F.2d 787, 795 (7th Cir. 1993). In this case, plaintiffs have provided evidence that they spoke on women's issues generally, and not (as in *Kokkinis* and other cases) merely about how this affected their private interests. For these reasons, their speech on these issues is in the public interest, and outweighs the police department's countervailing interests.

The Court finds that plaintiffs have raised a genuine issue of fact as to whether Hillard was motivated by plaintiffs' advocacy when he passed them over for promotion. Plaintiffs are entitled to prove a § 1983 retaliation claim through circumstantial evidence, *see Pugh v. City of Attica, Indiana*, 259 F.3d 619, 630 n. 9 (7th Cir. 2001) (noting similar evidentiary requirements for Title VII and § 1983 retaliation claims), and as indicated in our discussion of the Title VII claims, plaintiffs have presented evidence from which a reasonable jury could find that Hillard's stated reasons for his actions are pretextual.

Hillard has also raised the defense of qualified immunity with regard to the § 1983 claim. He does not ague, however (nor could he), that the law in this area is not clearly established. Rather, he argues that summary judgment should be granted because he did not act based on

7

plaintiffs' exercise of their First Amendment rights. The existence of genuine issues of material fact on that score precludes summary judgment on the immunity issue as well.

Because plaintiffs have failed to show that Hillard was final policymaker for the City, however, we agree that the City cannot be held vicariously liable for his personnel decisions, and is entitled to summary judgment on the § 1983 claim. Though Hillard was in charge of the promotion process, his authority to act was based on the municipal ordinance adopting a collective bargaining agreement between the policeman's union and the City, and plaintiffs have not made the required showing that his individual decisions amounted to custom or usage having the force of law. *See Kujawski v. Board of Commissioners*, 183 F.3d 734, 739 (7th Cir. 1999)("there must be a delegation of authority to set policy for hiring an firing, not a delegation of only the final authority to hire and fire").

## Conclusion

For the reasons stated above, the Court grants summary judgment in favor of the City on plaintiffs' § 1983 claim, but denies the City's motion for summary judgment on the Title VII claim and Hillard's motion for summary judgment on the § 1983 claim [docket # 51-1, 53-1]. The final pretrial order remains due on October 31, 2003, and the case remains set for trial on January 5, 2004 at 9:45 a.m. The case is set for a status hearing on September 30, 2003 at 9:30 a.m. to discuss the possibility of settlement.

MATTHEW F. KENNELLY
United States District Judge

Date: September 22, 2003