# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2722 | **DATE** | 5/20/2004 |
| **CASE TITLE** | Deloughery vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, defendant City of Chicago's motion for judgment as a matter of law is denied, but defendant's motion for a remittitur is granted. Defendant's motion for equitable relief is granted (110-1). The Court will enter a final judgment and/or an appropriate order of injunctive relief promptly following the receipt of Deloughery's decision on the issue of remittitur and the parties' supplemental front pay submissions.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | **MAY 2 7 2004** | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 121 |
| | Mail AO 450 form. | | GNA | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| OR | courtroom deputy's initials | U.S. DISTRICT COURT CLERK  2004 MAY 26 PM 3:39 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DOLORES DELOUGHERY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 02 C 2722 |
| | ) |
| CITY OF CHICAGO and TERRY HILLARD, | ) |
| | ) |
| Defendants. | ) |

**DOCKETED**
MAY 2 7 2004

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dolores Deloughery and Marie Johnston, both lieutenants with the Chicago Police Department, sued the City of Chicago under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and former Chicago police superintendent Terry Hillard under 42 U.S.C. § 1983. In their Title VII claim against the City, Deloughery and Johnston alleged that in failing to promote them to the position of captain, the City (through Hillard) had retaliated against them for filing charges of discrimination with the United States Department of Justice and the Illinois Department of Human Rights, and/or for complaining about and opposing discrimination within the Chicago Police Department. In their § 1983 claim against Hillard, Deloughery and Johnston alleged that Hillard's decision not to promote them was in retaliation for exercising their constitutional right of free speech.

A jury found in Deloughery's favor on her Title VII claim against the City and against her on her § 1983 claim against Hillard. The jury awarded her back pay in the amount of $18,000 and awarded damages for mental and emotional suffering in the amount of $250,000. The jury

also found front pay in the amount of $282,000; pursuant to a ruling made on a motion *in limine* filed by defendants, this finding was advisory only with respect to the Title VII claim. The jury found against Johnston on both of her claims. The Court has previously denied Johnston's motion for a new trial, in which she argued that the jury's verdict on her claims was inconsistent with its verdict in Deloughery's favor on her Title VII claim.

The City has moved for entry of judgment as a matter of law or for a new trial or a remittitur on the Title VII claim. Both sides have made submissions regarding the issue of front pay. Deloughery has moved for equitable relief, specifically a court-ordered promotion to captain, in lieu of all or part of a front pay award. In this Memorandum Opinion and Order, the Court rules on these issues.

**1.  City's motion for judgment as a matter of law or for new trial or remittitur**

  **a.  Claim of inconsistent verdicts**

The Court rejects Deloughery's argument that the City's motion for judgment as a matter of law must be denied on the ground that the City failed to move for judgment under Rule 50 at the close of the plaintiffs' case and failed to renew the motion at the close of the evidence. Though neither party has obtained the transcript from the court reporter, the Court's notes taken during the trial reflect that the City moved for judgment under Rule 50 at the close of the evidence, which is all that is necessary to preserve the point for renewal after trial. *Compare Eastern Natural Gas Corp. v. Aluminum Corp. of America*, 126 F.3d 996, 1000 (7th Cir. 1997) (cited by plaintiff; holding that Rule 50 motion was waived where it was not renewed at the close of the evidence).

The City argues that the jury's verdict in Deloughery's favor on the Title VII claim is

inconsistent with its verdict in Hillard's favor on the § 1983 claim. Even if true, this would not warrant the primary relief sought by the City, namely entry of judgment in its favor on the Title VII claim. As the Court stated in addressing a similar claim made by a defendant in another case:

> A court cannot grant [judgment as a matter of law] in order to harmonize jury verdicts that appear to point in opposite directions. *See, e.g., Mosely v. Wilson*, 102 F.3d 85, 90 (3d Cir. 1996). If it appears that the jury returned inconsistent verdicts, the Court must first do its best to reconcile the verdicts on some theory consistent with the evidence. *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119 (1963); *Cantellops v. Alvaro-Chapel*, 234 F.3d 741, 744 (1st cir. 2000); *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1992). If we cannot do so, however, it is improper to take the verdict favorable to one party and assume it is the "right" one, as [defendant] has asked us to do. *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 677 (7th Cir. 1985). Rather, the appropriate remedy is a new trial on all claims. *Gordon v. Degelmann*, 28 F.3d 295, 298-99 (7th Cir. 1994).

*EEOC v. Mid-Continent Security Agency, Inc.*, No. 99 C 5381, 2001 WL 800089, at *2 (N.D. Ill. July 12, 2001). Thus even were the City correct that the verdicts are inconsistent, the remedy would be a new trial, not entry of judgment in the City's favor.

In this case as in *Mid-Continent*, however, the jury's verdicts on Deloughery's claims were not inconsistent. The instructions given to the jury on the Title VII claim allowed it to return a verdict for Deloughery if it found the City had retaliated against her for filing charges with the Department of Justice and the Illinois Department of Human Rights, *and/or* for complaining about and opposing discrimination within the Chicago Police Department. *See* Instructions Given to the Jury, p. 15. By contrast, the instructions on the § 1983 claim required a finding that Deloughery's exercise of her free speech rights was a substantial or motivating factor in Hillard's decision not to promote her; the instruction stated that "activity in opposing discrimination in public employment is protected by the constitutional right of free

3

speech." *See id.*, p. 16. The Court agrees with the defendants that even though the Title VII claim was against the City, it was based entirely on Hillard's alleged conduct. But the jury reasonably could have found that Hillard based his decision not to promote Deloughery on her filing of charges with the DOJ and the IDHR and did not take into account her anti-discrimination advocacy within the Police Department. The Court agrees with Deloughery that the instructions on the § 1983 claim did not permit, or at least did not appear to the jury to permit, a verdict in Deloughery's favor on that claim based on retaliation for filing DOJ and IDHR charges. Thus the jury could have found for Deloughery on the Title VII claim based on a finding of retaliation for those complaints, and could have found for Hillard on the § 1983 claim based on a finding that he had not retaliated against Deloughery for her general anti-discrimination advocacy. The verdicts were not inconsistent.

For these reasons, the Court denies the City's motion for judgment as a matter of law, as well as its motion for new trial based on the inconsistent verdict claim.

### b. Claim of excessive award of compensatory damages

The City asks the Court to order a new trial or a conditional remittitur with regard to the jury's award of $250,000 in damages for emotional distress, arguing that the award is excessive. When reviewing an award of compensatory damages, the Court makes three inquiries: whether the award is "monstrously excessive," whether there is a rational connection between the evidence and the award, and whether the award is roughly comparable to awards made in similar cases. *See, e.g., David v. Caterpillar, Inc.*, 324 F.3d 851, 864 (7th Cir. 2003); *Tullis v. Townley Engineering & Mfg. Co.*, 243 F.3d 1058, 1066 (7th Cir. 2001).

In making this analysis, it is important to bear in mind that our legal system confers on

4

juries the function of placing a value on pain and suffering, both emotional and physical. Judges do not inherently possess more wisdom than jurors in performing this function, and as such we do not and should not have a "'chancellor's foot' veto," *see United States v. Russell*, 411 U.S. 423, 435 (1973), authorizing us to revise at will the jury's decision. In *Tullis*, Chief Judge Flaum, in approving a jury's award of $80,000 for emotional distress in a case in which the defendant contended that the award was excessive and sought to compare it with other purportedly similar cases in which awards of $40,000 and $50,000 were made, aptly said that a court, in assessing a damage award against a claim of excessiveness, should "take[ ] into account the jury's right to make awards based on its view of a witness's demeanor and credibility." *Tullis*, 243 F.3d at 1069.

The City argues that the award is monstrously excessive and unsupported by the evidence because it was based exclusively on Deloughery's testimony without any supporting expert testimony, and because Deloughery conceded she never sought treatment from a physician or mental health professional for her distress. Though a plaintiff's consultation and treatment by mental health professionals is certainly a factor to be taken into account in assessing the reasonableness of a damage award, it is not a controlling factor. A given individual may have reasons unrelated to the severity of her distress for not seeking treatment (cultural, religious, or from her upbringing), and thus one cannot always draw from a failure to seek treatment an inference that the plaintiff suffered only minimal distress. And as Chief Judge Flaum noted in *Tullis*:

> An award for non-pecuniary loss can be supported, in certain circumstances, solely by a plaintiff's testimony about his or her emotional distress. "It is within the jury's province to evaluate the credibility of witnesses who testify to

5

> emotional distress, and we shall not disturb those credibility determinations on appeal." The jury was able to observe [plaintiff] when he was testifying and they apparently found his testimony to be sincere and sufficient to convince them that he merited the award they gave him.
>
> The jury, as seen by the amount they awarded [plaintiff], which some may even characterize as exceedingly generous, must have not believed that [plaintiff] needed to show that he sought the help of psychologists or friends for his emotional distress or that he was required to provide more detail about either his emotional distress or the inconvenience that he experienced.

*Tullis*, 243 F.3d at 1068 (citations omitted).

The Court also disagrees with the City's contention that the evidence was insufficient to support a significant damage award for emotional distress. Deloughery is a career police officer who has served with the Chicago Police Department for nearly twenty-two years, and father served as a police officer before her. The evidence reflected that she served the Department and the people of Chicago with distinction in a variety of assignments, including as patrol officer; youth officer; the only female "tactical" sergeant at the time she served in that capacity; a trainer of other officers; a field lieutenant in the Austin district; the commanding officer in charge of curriculum, testing, and evaluation at the Police Academy; and the commanding officer in the Youth Division of Area 5. It was evident from Deloughery's testimony that she took great pride in her work and in her service to the Department. It is true, as the City points out, that Deloughery kept a stiff upper lip when on the job after her promotion was turned down, and that she did not seek psychiatric care. But from Deloughery's demeanor while testifying and the content of her testimony, there was no mistaking the significant emotional impact that the retaliation had on her. She testified credibly that she was "devastated" by Hillard's decision not to promote her, and this testimony had a firm basis in the evidence. According to Hillard, his

6

promotion decisions were based on, among other things, the applicants' integrity, morals, and values, as well as his level of confidence in the particular candidate; thus described, Deloughery reasonably could have seen the decision not to promote her as amounting to vote of no-confidence in her as an upstanding and loyal member of her chosen vocation. Deloughery stated she had worked very hard to succeed in the Department, and that as a result of these factors, the decision to refuse her request for promotion was very hard both on her and on her father, a retired police officer in failing health. The jury acted reasonably in finding that Deloughery had suffered and would continue to suffer significant emotional distress as a result of Hillard's decision to deny her promotion to captain.[1]

The real question, however, concerns the amount of damages the jury assessed. Both sides have provided citations to cases that they find similar and that support their respective positions. Predictably, Deloughery has relied on cases with higher awards, and the City has relied on cases with lower awards. A few notes of caution are in order before we review their submissions. First, no evidence of the awards in these supposedly comparable cases was presented to the jury. Despite the suggestion in *Jutzi-Johnson v. United States,* 263 F.3d 753, 758 (7th Cir. 2001), that such evidence should be presented to the fact finder, there is no practical way to do this in a jury trial: the damages phase of the case would overwhelm both the court and the jury because it inevitably would descend into a series of mini-trials in which each side attempted to mine the data from the "comparable" cases to show their similarity or dissimilarity. But this aside, there is something rather incongruous about the notion that a court should

---

[1] The jury was instructed, without objection by defendants, that damages included compensation for both present and future emotional distress. *See* Instructions Given to the Jury, p. 21.

overturn a jury's verdict as excessive by comparison to other cases that jury was not allowed to assess.

Second, our system has not chosen an adjudicatory model that sets, *de facto,* a schedule of compensation to be awarded for particular types of injuries. If we are to remain faithful to the Founders' vision, which includes submitting civil disputes to citizen juries, and if damages for physical and emotional pain and suffering are to be available, we must be willing to accept variations in how juries will assess those damages in different cases.

Third, basing a determination of fairness on bare comparison with other reported cases is inherently problematic. The cases that are reported are but a fraction, and maybe a small fraction, of the universe of jury awards; many cases are not appealed at all, and many others are settled post-verdict. Further, the description of the evidence found in reported district and appellate court decisions typically does not permit a realistic determination of whether the case is truly comparable to the one being evaluated. As this Court noted in a related context in deciding a suit under the Federal Tort Claims Act,

> The only materials reasonably available to litigants [as evidence of comparable verdicts] are reported decisions from other cases or reports from publications such as the Cook County Jury Verdict Reporter. Reliance on such evidence carries with it inherent limitations. A reported decision concerning a trial cannot possibly relate the course of a trial with the same detail and flavor in which it was presented to the fact finder. The Jury Verdict Reporter and similar publications tend to operate by asking lawyers to respond to a series of pre-formatted questions about various particulars of the case. This fill-in-the-blanks approach, though certainly useful in helping lawyers evaluate cases, it at best a blunt instrument in helping a fact finder determine what damage award is appropriate.

*Zurba v. United States,* 247 F. Supp. 2d 951, 961 (N.D. Ill. 2001).[2]

---

[2] Neither party in this case has referred to cases reported in the Jury Verdict Reporter or similar publications.

Moreover, as this Court also noted in the *Zurba* case,

> The problems [in determining a damage award] are compounded when the information that one is seeking concerns awards for pain and suffering, whether physical or emotional or both. There is no exact standard for fixing damages for pain and suffering; courts routinely tell juries exactly this when instructing them. *See, e.g.,* 3 E. Devitt, C. Blackmar & M. Wolff, Federal Jury Practice and Instructions § 85.02 (1987 & Supp.2000); Fifth Circuit Pattern Jury Instructions (Civil) §§ 15.4 & 15.2 (1999) (the latter telling the jury that it "must use sound discretion in fixing an award of damages"). It is impossible to know all of the factors that led a jury or judge to make a particular award for pain and suffering in a particular case. The fact finder's observation and assessment of the plaintiff at trial, for example, may be a significant factor affecting the award upward or downward, but this factor is unlikely to be assessed in any source to which a court would look in attempting to determine comparability.
>
> Just as importantly, different plaintiffs can experience different levels of pain and suffering from similar incidents. A defendant in a tort case "must take his plaintiff as he finds [her]," even if she is more susceptible to injury than the average person. *See, e.g., Reed v. Union Pacific Railroad Co.,* 185 F.3d 712, 717 (7th Cir. 1999); *Colonial Inn Motor Lodge, Inc. v. Gay,* 288 Ill. App. 3d 32, 45, 680 N.E.2d 407, 416 (1997). Thus two cases arising from similar incidents may not be all that similar at all. Our legal system has not attempted to set schedules of presumptive awards for various types of injuries, and a court cannot and should not do that under the guise of determining "comparability."

*Zurba*, 247 F. Supp. 2d at 961-62.

With these cautionary notes in mind, we review the other cases cited by the parties. The City, though not proposing a figure to which the damage award should be reduced, appears to contend that an appropriate award would fall somewhere in the range of $15,000 to $50,000, as that is the range revealed by the cases it has cited. *See David,* 324 F.3d at 864-85 (affirming remittitur of $100,000 award to $50,000); *Lindale v. Tokheim Corp.,* 145 F.3d 953, 958-59 (7th Cir. 1998) (suggesting $25,000 award was excessive); *Fleming v. County of Kane,* 898 F.3d 553, 561-62 (7th Cir. 1990) (affirming reduction of $120,000 award to $40,000); *Cygnar v. City of Chicago,* 865 F.3d 827, 847 (7th Cir. 1989); *Ramsey v. American Air Filter,* 772 F.2d 1303, 1313

9

(7th Cir. 1985) (reducing $75,000 award to $35,000); *Clark v. Metro Health Foundation, Inc.*, 90 F. Supp. 2d 976, 981-82 (N.D. Ind. 2000) (reducing $150,000 award for one plaintiff to $50,000 and $100,000 award to another plaintiff to $35,000).

By contrast, the cases cited by Deloughery indicate a range higher than the jury's award in this case. *See Bogle v. McClure*, 332 F.3d 1347, 1359 (11th Cir. 2003) (racially motivated transfer to less desirable position; sustaining compensatory award of $500,000 without any medical evidence); *Bell v. Clackamas County*, 341 F.3d 858 (9th Cir. 2003) ($750,000 award in case involving racial harassment and termination; award was not challenged); *Koster v. Trans World Airlines*, 181 F.3d 24, 34-36 (1st Cir. 1999) (reducing award of $716,000 to $250,000 in age discrimination case involving "reduction in force"; no medical testimony); *Peyton v. DiMario*, 287 F.3d 1121, 1126-28 (D.C. Cir. 2002) (hostile work environment / termination case; reducing $482,000 award to $300,000 based on statutory cap, but affirming award at that level over challenge to excessiveness; no medical evidence indicated). The fact that these cases are from other Circuits does not make them any less pertinent; there is no hint in the Seventh Circuit's jurisprudence that comparability has a geographic component. At least some of these cases, however, involved terminations or ongoing harassment, which reasonably may be viewed as more serious deprivations than the one Deloughery experienced.

The Court's own research reflects, among other things, that in *Webb v. City of Chester*, 813 F.2d 824 (7th Cir. 1986), the court made a detailed comparison with awards in other cases involving improper terminations. These ranged from a low of $400 to a high over $50,000. *See id.* at 836. But as Chief Judge Flaum indicated in *Tullis*, when an older verdict is assessed for comparison purposes, it should be converted to current dollars. The higher-end verdicts from

the early 1980's reviewed in *Webb*, converted to today's dollars, would fall in the range of $50,000 to $100,000.[3]

In sum, our review reflects that the award in this case was higher than other compensatory damage awards in this Circuit in arguably similar cases.[4] That by itself does not make the award grossly excessive. There is no rule that the highest reported verdict that can be found sets a cap for future awards. On the other hand, the Seventh Circuit has ordered or approved reductions of lower awards in some cases in which, all else being equal, the deprivation would be considered more severe (termination as opposed to non-promotion). But by the same token, the award is by no means the highest given in a Title VII case, as reflected by the cases cited by Deloughery from other Circuits. On balance, the Court would be inclined to affirm the award as roughly within an acceptable range, were it not for the Seventh Circuit's discussion in *Neal v. Honeywell, Inc.*, 191 F.3d 827 (7th Cir. 1999), a case not cited by any of the parties but which our own research disclosed. In that case Judge Easterbrook, writing for the court, upheld an award of $200,000 in a case involving both harassment and threats to the plaintiff and her eventual termination. The court noted, however, that "[h]ad [plaintiff] merely lost her job as a result of the discrimination,

---

[3] To make the adjustment, the Court first made an effort to determine, based on the court of appeals docket number or the date of the district court opinion, when the trial was held, and then used a conversion table prepared by an Oregon State University professor, found at http://oregonstate.edu/dept/pol_sci/fac/sahr/sahr.htm. The table is based on government data concerning the Consumer Price Index. The Court used the conversion for "estimated 2004," which applied a conservative estimate of 1.5 percent inflation for the current year.

[4] The jury in ADA case tried before this Court found compensatory damages of $302,000, which the Court reduced to $300,000 due to statutory caps but then affirmed over an excessiveness challenge. But in that case the plaintiff had suffered almost debilitating emotional distress, confirmed by psychiatric testimony. *See Martyne v. Parkside Medical Services*, No. 97 C 8295, 2000 WL 748096 (N.D. Ill. June 8, 2000).

11

we would think $200,000 excessive, even though [plaintiff] suffered ostracism, a year-long depression, and upheaval in her life." *Id.* at 832. Though the comment is *dictum,* it is *dictum* we cannot prudently ignore.

Based on the Court's assessment of the relevant factors, in particular the absence of evidence of symptomatology, the fact that Deloughery was not terminated, and comparable cases, and taking into account the leeway that our system gives to juries, the Court concludes that a rational connection between the $250,000 award and the evidence in this case is lacking, and therefore grants the City's motion to the extent it seeks a remittitur of the compensatory damage award. The Court will grant the City's motion for a new trial on the issue of damages[5] unless Deloughery accepts, within seven days of this order, a reduction of the compensatory damage award to $175,000, an amount the Court finds to be well within the range of reasonableness given the particular circumstances of this case.

### c. Challenge to back pay award

The City also challenges the jury's back pay award of $18,000. The entirety of its argument in its opening memorandum was as follows:

> The City also requests that this Court order a new trial, or order a conditional remittitur, for the jury's award of $18,000 in back pay, based on the "lost chance" doctrine. The City's argument on the lost chance doctrine is set forth in its Submission Regarding Front Pay, which it incorporates and is filing simultaneously with these papers.

Dfdt's Mem. in Supp. of Mot. for Judgt. (etc.), p. 6. In the "incorporated" part of its front pay submission, the City argued that Deloughery was entitled to only 1.02 percent (one ninety-

---

[5] The City has offered no basis for giving a new trial as to liability simply because the jury's damage award was excessive.

12

seventh) of the front pay award, because there were 97 candidates eligible for promotion, and there was no guarantee she would get the job. *See* Dfdt's Submission Regarding Front Pay, p. 5. By "incorporating" this argument, the City evidently intended to make the identical point with regard to back pay. It did not revisit the issue of back pay in its reply memoranda on either the new trial motion or the front pay issue.

This issue has been waived. First of all, the City did not sufficiently develop the point in its motion and memoranda, at least not with regard to the back pay issue. Second, the issue was not raised in timely fashion. The Seventh Circuit has ruled that back pay is an equitable determination ordinarily to be made by the Court, not the jury, but that the parties may consent to its determination by a jury, either expressly or by default. *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500-01 (7th Cir. 2000). The latter is what occurred here; the City effectively consented to the jury's determination of the issue by failing to object. More importantly for present purposes, the City made no effort to seek a jury instruction encompassing its "lost-chance" theory. The jury was told, without objection, that Deloughery was to be awarded "[a]n amount that reasonably compensates the plaintiff for any lost wages through the date of trial resulting from the fact that she was not promoted to the position of Captain." *See* Instructions Given to the Jury, p. 21. The City made no argument to the Court or to the jury that a back pay award should be limited in the manner it now proposes. The argument has been forfeited.

In any event, the argument is without merit given the way the City has argued it. It contends that as between Deloughery and the 96 other candidates, there is no way of knowing who would have gotten the last spot available. *See* Dfdt's Submission Regarding Front Pay, p. 5.

13

But Hillard testified that he made all his promotion decisions on merit. The jury found that one of those decisions – concerning Deloughery – was made not on merit but for inappropriate reasons. No such evidence was presented as to the other candidates. Thus even if the City had argued this point at trial, the jury reasonably could have concluded that Deloughery in fact would have gotten the last available slot.

### 2. Deloughery's motion for equitable relief

Because a new trial, if ordered, will be limited to the issue of damages, the verdict as to liability stands, and the Court therefore must address Deloughery's motion for equitable relief. Deloughery seeks a court-ordered promotion to a currently vacant captain position, with seniority and benefits retroactive to December 2000, the date she would have been promoted absent the City's retaliation. The City objects, arguing this is an inappropriate form of relief, there is no support for the claim that any positions are open, and a promotion would interfere with the police superintendent's prerogatives and may harm innocent third parties.

The law is clear that reinstatement – in a case like this one, "instatement" in the first instance – is the preferred remedy in Title VII cases. *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 861 (7th Cir. 2001); *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1370 (7th Cir. 1992). The decision is "consigned to the sound discretion of the district court." *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1045 (7th Cir. 1994). Reinstatement should not be granted "where the result would be a working relationship fraught with hostility and friction," *Bruso*, 239 F.3d at 851, but by the same token "[a] court must be careful ... not to allow an employer to use its anger or hostility toward the plaintiff for having filed a lawsuit as an excuse to avoid the plaintiff's reinstatement." *Id.*

14

Fortunately the issue of hostility on the part of Deloughery's superiors is not present in this case. Deloughery did not claim, and there is no evidence, that anyone other than former superintendent Hillard retaliated against her. But Mr. Hillard retired from that position in August 2003, and there is no indication in the record that the current superintendent, Superintendent Philip Cline, had any involvement whatsoever in Hillard's promotional decisions or that he has had any negative interaction with or views regarding Deloughery. In addition, there is no evidence of actual or potential hostility against Deloughery by co-workers.

The other types of considerations that might lead the Court to be hesitant in ordering a promotion likewise do not exist. The Court rejects the City's argument that the position of captain is too significant to allow the Court to order a promotion over the City's or the new Superintendent's objection (though we note the City has offered no evidence at all with regard to Superintendent Cline's preferences in this regard). There is no question that the position of police captain involves a great deal of responsibility to the Department and the public. But there likewise is no question that Deloughery meets the qualifications for the position; the City has made no showing to the contrary aside from Hillard's contention, rejected by the jury, that he made the decision not to promote based on the merits and without regard to her prior discrimination claim. And even though the position may involve a direct or indirect reporting relationship to the Superintendent, any suggestion that those serving as police captains are anything approaching a "kitchen cabinet" of the Superintendent would be strained to say the least: based on the materials submitted by Deloughery in support of her motion for equitable relief, it would appear that the Department has at least 100 captains, and possibly more – one or more for each of three watches at each of the City's 25 police districts, plus those with

15

assignments other than at a police district. Finally, the evidence at trial reflected that Deloughery, serving as a lieutenant, has from time to time performed without criticism certain key functions often performed by captains (for example, as watch commander) due to position vacancies in the police district where she served. In sum, there is no basis in the evidence for a contention that Deloughery would not "enjoy the confidence and respect of [her] superior[ ]," Superintendent Cline, such that her motion for equitable relief should be denied. *See Bruso*, 239 F.3d at 862.

The Court agrees, however, with the City's implicit contention that the Court should not willy-nilly order Deloughery's promotion into a position that may now be vacant simply because that position is open. It is reasonable to permit the Department to make a fair determination of the particular assignment in which Deloughery should serve. Exercising the Court's equitable discretion, upon entry of final judgment we will direct the City to promote Deloughery to the position of captain within 120 days of the entry of judgment, with seniority and benefits credit retroactive to December 2000, the date on which her promotion was wrongfully denied, plus "front pay" at the differential between her current rate and the applicable captain's rate from the date of the jury's verdict to the date of the promotion. The Court believes that the 120 day interval will give the Department reasonable time to make a fair determination of Deloughery's proper assignment in the captain rank, and will also minimize any potential adverse effect on others who may anticipate promotion to captain in the near term.

3.  **Front pay**

The Court rejects the City's contention that front pay is unavailable in cases involving wrongful failure to promote. *See Hildebrandt v. Ill. Dept. of Natural Resources*, 347 F.3d 1014,

16

1031 (7th Cir. 2003); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1066 (8th Cir. 1997). In view of the Court's ruling granting Deloughery's motion for equitable relief, the City's remaining objection to front pay, which concerns the duration of a front pay award, is moot.

**Conclusion**

For the reasons stated above, defendant City of Chicago's motion for judgment as a matter of law [docket # 111-1] is denied, but defendant's motion for a remittitur [# 111-3] is granted. Unless plaintiff Deloughery advises the Court on or before May 27, 2004 that she accepts a reduction of the compensatory damage award to $175,000, the Court will grant in part defendant's motion for a new trial [# 111-2] – "in part," because the trial will be limited to the issue of compensatory damages – Plaintiff's motion for equitable relief [# 110-1] is granted. On or before May 27, 2004, the parties are directed to make a joint submission specifying the amount of "front pay" to which Deloughery is entitled under the Court's ruling from the date of the verdict to the present date, and the amount of weekly front pay that will accrue thereafter until Deloughery is promoted to captain. The Court will enter a final judgment and/or an appropriate order of injunctive relief promptly following the receipt of Deloughery's decision on the issue of remittitur and the parties' supplemental front pay submissions.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 20, 2004